NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250950-U

NO. 4-25-0950

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JAYME D. CAVE, | ) | No. 19CF560 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court affirmed defendant's sentence after his probation was revoked where (1) the trial court correctly sentenced defendant on the underlying charge rather than for his conduct while on probation and (2) defendant did not meet his burden to show that his counsel was ineffective for failing to object to the trial court considering an improper factor in aggravation during sentencing.

¶ 2     Defendant, Jayme D. Cave, appeals from the trial court's judgment revoking his probation and resentencing him to an extended term of nine years in prison for aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a), (d)(1)(G) (West 2018)). He argues that during resentencing, the court improperly considered as aggravating factors (1) his conduct on probation rather than the circumstances underlying the original offense and (2) a factor inherent in the offense. For the reasons that follow, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On June 6, 2019, the State charged defendant with (1) possession of a stolen vehicle

(625 ILCS 5/4-103(a)(1) (West 2018)) (count I), (2) aggravated DUI with two prior DUI convictions (625 ILCS 5/11-501(a), (d)(1)(G) (West 2018)) (count II), (3) aggravated DUI while his driver's license was revoked for a prior DUI (625 ILCS 5/11-501(a), (d)(1)(G) (West 2018)) (count III), and (4) driving while his license was revoked (625 ILCS 5/6-303(a), (d-3) (West 2018)) (count IV). Defendant initially pleaded not guilty and requested a jury trial.

¶ 5                                   A. Guilty Plea

¶ 6        On December 4, 2020, the parties indicated to the trial court, Judge Gail Noll presiding, that they had negotiated a disposition. The State explained that defendant agreed to plead guilty on count II, aggravated DUI, and he was eligible for extended-term sentencing of 3 to 14 years in prison or probation. The remaining three counts would be dismissed. Defendant was also on probation at the time in connection with another case, Sangamon County case No. 19-CF-22, and his Class 4 extended-term probation in that case "would be terminated unsuccessfully so that he could then be placed on 30 months of probation" in the instant case. He would additionally be required to pay fines and fees and continue attending counseling. The court asked defendant a series of questions to confirm he understood the plea agreement.

¶ 7        The trial court asked the State to provide a factual basis and defendant's criminal history. The State provided the following information:

> "If this case proceeded to trial, members *** of the Sangamon County Sheriff's Office would testify that on or about June 5th, 2019, at approximately 6:07 a.m., they were called to the *** vicinity of 209 Lincoln Street in New Berlin, which is here in Sangamon County in the State of Illinois, for a driver that was disabled in a ditch and had hit a tree.
>
> Upon arrival, they did locate [defendant] behind the wheel of a car. They

- 2 -

observed him in the car in a state that they described as very intoxicated. The only person in the car was the driver in the driver's seat and also was observed by an independent witness at the scene to be drinking a bottle of vodka that he had in the car with him until the point that the police arrived, Judge.

The State would also present evidence from the Secretary of State's Office by way of certified driving abstract that [defendant] has two prior convictions for [DUI] in the State of Illinois; one was in 2009 and the second in 2017, Your Honor.

By way of further criminal history, of course, in the case that was before the Court today, he was placed on probation in 2019, for Class 4 aggravated fleeing and eluding.

He—the most serious offense beyond that is what makes him extended term today is his 2013 charge for aggravated robbery, a Class 1 felony, for which he did receive time in the Department of Corrections.

Other than that, we have maybe three Class A misdemeanors, domestic battery in 2007, a retail in 2011, and a criminal damage to property in 2019, Your Honor."

Defendant stipulated that this would be the evidence if the case went to trial. The court found that defendant's plea was knowing and voluntary, accepted the plea agreement, and placed defendant on 30 months of probation. Defendant further stipulated to the State's petition to revoke probation in case No. 19-CF-22, and the court terminated his probation in that case unsuccessfully. On the State's motion, the court dismissed the remaining charges in this case, along with those in another pending case, Sangamon County case No. 20-CF-34.

¶ 8                                    B. Petition to Revoke Probation

¶ 9          The State filed a petition to revoke defendant's probation on February 10, 2021, based on the fact that defendant was charged with criminal damage to property in Sangamon County case No. 21-CM-68, failed to report to probation as ordered when he missed a scheduled appointment on January 20, 2021, and failed to pay monthly probation services fees and court costs totaling $1,729. Defendant did not appear at hearings on the petition on March 11 or April 27, 2021.

¶ 10         The State filed seven amended petitions to revoke probation between May 2021 and April 2024. These petitions alleged that defendant committed the offenses of (1) driving while his license was suspended on May 5, 2021, (2) reckless driving, fleeing police, driving while his license was suspended, and driving while his license was revoked on May 17, 2021, (3) DUI and driving while his license was suspended on August 31, 2021, (4) aggravated battery to a peace officer, resisting a peace officer, and aggravated battery on November 30, 2021, (5) retail theft on February 26, 2022, (6) DUI on November 12, 2022, (7) aggravated DUI and reckless driving while his license was revoked on November 12, 2022, (8) driving on a suspended license on June 13, 2023, and (9) unlawful possession of a weapon by a felon on October 24, 2023. Defendant also failed to report to the probation department 20 times between January 2021 and September 2023. He continued to fail to pay his outstanding balance of $1,729 for probation services fees and court costs. He also failed to complete mental health counseling as ordered, as he was discharged unsuccessfully from mental health counseling at Memorial Behavioral Health on August 4, 2022.

¶ 11         The petition to revoke probation was continued many times between May 2021 and September 2024, initially to allow defendant time to pay his fines and obtain mental health treatment, and then to allow the parties to negotiate an agreement and resolve other pending cases.

Defendant was in custody for at least some of this time, though it is unclear from the record precisely which periods of time he was in jail. A warrant for defendant's arrest for failure to appear was issued on October 6, 2022. He was released with pretrial conditions in October 2023 but was arrested on other charges later that month and again in April 2024. Though it does not appear in the record on appeal, defendant apparently filed a motion for the reconsideration of his pretrial release in September 2024, which the trial court denied.

¶ 12　　　　The trial court, Judge Jack Davis II presiding, eventually proceeded to a hearing on the State's petition to revoke defendant's probation on December 13, 2024. The State first called Kent Boyd, a Sangamon County probation officer, as a witness. He testified that he was assigned to defendant's case when he was sentenced to 30 months of probation. Boyd confirmed that the terms of defendant's probation required him to report to his probation officer, pay probation services fees and court costs, complete mental health treatment, and not violate any criminal or traffic laws. Boyd testified that defendant missed 20 probation appointments with him between January 2021 and September 2023. During Boyd's supervision of defendant, defendant came into custody on new arrests; while he was in custody on those allegations, Boyd did not hold any failures to appear against him. All 20 of the appointments that defendant missed occurred while he was not in custody.

¶ 13　　　　As to mental health treatment, Boyd testified that defendant contacted Memorial Behavioral Health in October 2020, but this attempt "was cut short due to the defendant and the interviewer having an issue apparently." Defendant made contact again in October 2021, completed a mental health assessment, and was scheduled to receive ongoing treatment. He was diagnosed with bipolar disorder with psychotic features. However, he did not complete treatment

because of a "lack of compliance with attending appointments." Boyd was not aware of defendant making any payments toward his outstanding fines, fees, or costs.

¶ 14 On cross-examination, Boyd acknowledged that defendant's mental health issues would affect his ability to maintain employment, which would, in turn, affect his ability to pay the costs and fees. He stated it was possible that defendant's failure to appear at some of his appointments was due to his mental health issues.

¶ 15 Defendant testified next. He explained that he missed some of the probation appointments because he had COVID-19 and missed others because his "mental state probably was off." He stated that he has "very bad mental illness" and anger issues due to his father committing suicide and his mother and him finding his body. He testified that he had a counselor at Memorial Behavioral Health, but she left, and "a lot was going on because of COVID, so they would push *** you out to get service." He said that they prescribed medication for him but stated, "[I]f I don't like it, I won't take it." He discontinued taking the prescribed medication and "was just trying to get a new counselor to get on different medication." He testified that he "would always call [Boyd]" to "let him know when [he] couldn't make it" to their scheduled appointments.

¶ 16 The State argued that it had proved by a preponderance of the evidence that defendant had not complied with the terms of his probation. Upon a question from the trial court, the State clarified that it was not proceeding on the paragraph in the petition to revoke probation that listed pending criminal charges against defendant, only on the allegations that defendant missed probation appointments and did not comply with mental health treatment. The State acknowledged that defendant had mental health issues but argued that he could not "come into court today and use that as justification for why his probation should not be revoked." The State

contended that defendant understood that he needed treatment but chose not to take the medication prescribed for him.

¶ 17　　　In turn, defense counsel argued that defendant's failures to appear were not willful violations of his probation because of his mental health issues. She stated that defendant needed help to comply with these conditions and requested that the trial court refer him to mental health court.

¶ 18　　　In ruling on the petition, the trial court acknowledged that defendant's mental health was a reason for missing some of his probation appointments, but that was insufficient to find that all his failures to appear were not willful. The court found that defendant willfully violated the terms of his probation by failing to appear at his probation appointments and failing to complete mental health treatment.

¶ 19　　　　　　　　C. Fitness and Resentencing

¶ 20　　　On January 6, 2025, defendant filed a motion for a fitness evaluation, stating that his prior mental health treatment and diagnosis cast doubt on his fitness to stand trial and assist in his defense. At a hearing on January 15, 2025, the trial court noted that there had not been a *bona fide* doubt raised about his fitness, and the motion requested an examination to determine if there was one. The State argued that a difficult client was not the same as an unfit one, and defendant was not unfit. The court ultimately granted the motion for a fitness examination.

¶ 21　　　Defendant did not appear at a sentencing hearing scheduled for May 15, 2025, because he became violent and verbally aggressive toward officers at the jail when they attempted to escort him to court, and he had to be returned to his cell. The State noted for the record that it was prepared to hold a sentencing hearing and had four witnesses ready to present evidence in aggravation. Defense counsel stated that she had just learned that day that the State was going to

call these four witnesses to testify regarding pending charges against defendant. She argued that because defendant had not yet been found guilty of those crimes, "it would be improper for them to testify regarding these crimes." Defense counsel expressed her intent to file a motion to bar this testimony in aggravation. The trial court agreed that if the witnesses were going to testify about "interactions with [defendant] for crimes that he enjoys the presumption of innocence on," it "would be improper and probably reversible error for me to consider that as a factor in aggravation." The State indicated that if defense counsel "want[ed] to get something on file, we can certainly respond as appropriate as to our position and go from there." Defense counsel asked if the court and parties "want[ed] to set a date for the motion issue regarding the aggravation." The court indicated they would handle that issue the same day as the sentencing hearing.

¶ 22    The trial court held a sentencing hearing on June 13, 2025. As a threshold issue, the parties addressed the fitness examination, which concluded that defendant was fit. Defense counsel acknowledged there was no reason why the sentencing hearing should not go forward. The examination report was filed with the court. Next, the court addressed defense counsel's objection to the State's evidence in aggravation. Although she did not file a written motion, defense counsel argued that testimony about crimes charged that had not resulted in convictions was more prejudicial than probative. The State indicated that it had prepared a memorandum discussing the issue. The State argued that it was able to present evidence of other pending criminal proceedings through witnesses subject to cross-examination, and then it would become a question for the court to determine the weight to be given to those charges. Defense counsel expressed her concern that she did not have a chance to review the State's memorandum, and it was her understanding that "this issue had been resolved" at the previous hearing. She said she was "not prepared to address all of his pending charges at this point in time." Counsel requested a chance to respond to the

State's memorandum, and the court pointed out that "[y]ou're doing that right now." The State gave defense counsel copies of the cases that it relied on in its memorandum, and the court gave counsel a 30-minute recess to review them.

¶ 23    After reading the cases the State relied on, defense counsel conceded that any evidence related to driving "would be relevant for the Court to consider in aggravation" on the aggravated DUI charge but argued that any charges unrelated to driving would be irrelevant and highly prejudicial. The trial court, relying on *People v. Jackson*, 149 Ill. 2d 540, 553 (1992), overruled defendant's objection and allowed the witnesses to testify.

¶ 24    The trial court proceeded to the hearing. The State noted that based on defendant's criminal history, he was eligible for an extended term of 3 to 14 years in prison but was still probation-eligible. The State presented the following evidence in aggravation.

¶ 25    Shane Matli, a deputy with the Sangamon County Sheriff's Office, testified that on August 31, 2021, he received a report about a suspicious vehicle and attempted to initiate a traffic stop, but the vehicle "continued to drive eastbound erratically, kind of going back and forth between both lanes." He followed the vehicle for five miles. During the drive, one of the vehicle's tires went flat, and Matli observed sparks coming out from under the vehicle before the tire fell off, though the vehicle kept driving. The vehicle eventually came to a stop, and the driver was cooperative, "[t]o an extent." On the State's request and without objection, the trial court admitted Matli's body camera footage into evidence.

¶ 26    Mark Bridges, an officer with the Springfield Police Department, testified that on November 30, 2021, he received a dispatch for a disturbance at an apartment building. When he entered the apartment building, he encountered defendant on the stairs, who was "immediately agitated and not pleased that [they] were there." Defendant led them up to a residence, where the

owner confirmed that defendant did not live there and she wanted him removed from the property. Defendant "was extremely agitated, unwilling to cooperate, told [them] to take [their] badges and uniforms off, fight with him and other agitated utterances." Bridges "tried to give him ample opportunity to put his shoes on and leave the property," but it eventually got to the point where he had to arrest defendant and physically remove him. On the State's request and without objection, the trial court admitted Bridges's body camera footage into evidence. Bridges testified that defendant was highly intoxicated.

¶ 27    Eric Wise, an officer with the Springfield Police Department, testified that on October 24, 2023, he responded to a call about a person with a weapon. A man had apparently "take[n] his bag off and drop[ped] it on [a] female." Wise found a bag with a firearm inside it. Defendant was at the scene, but Wise did not witness defendant possessing or taking off the bag. Wise arrested defendant. On the State's request and without objection, the trial court admitted a photo from Wise's body camera into evidence that depicted the bag with the firearm inside.

¶ 28    Ian Hollendonner, an officer with the Springfield Police Department, testified that on April 12, 2024, he responded to a call about a man at County Market "yelling in the parking lot wielding a bat and *** an ice pick." Hollendonner observed the man wielding a bat and another sharp object, "making gestures towards another subject." On the State's request and without objection, the trial court admitted Hollendonner's body camera footage into evidence.

¶ 29    Defendant testified that he was at County Market on April 12, 2024. He stated that he thought his girlfriend was having an affair with an employee at the market. This man approached defendant and threatened him in the parking lot, and defendant admitted he "grabbed them weapons" from his car. Defendant said he never threatened anyone and "was trying to leave." He said he "would like to press charges [against] that guy."

¶ 30    Defendant then made a statement in allocution. He apologized to the trial court and acknowledged that he has "a mental problem" and "a problem with alcohol and drugs" but stated, "[I]f you all would offer me [Treatment Alternatives for Safe Communities (TASC)] probation, I would just want to get this whole situation cleared up so I can move forward with my life." He said he "got a little girl that needs [him]" and he "might need help, but [he is] not a bad person." At defense counsel's request and without objection, the court admitted into evidence a TASC evaluation of defendant. This TASC finding letter was dated August 9, 2024, diagnosed defendant with alcohol and opioid withdrawal, recommended inpatient services, and concluded that if TASC case management were made available to him, defendant's "likelihood to be rehabilitated will be strong."

¶ 31    The presentence investigation report (PSI) included the following description of the original offense:

> "On June 5, 2019, a Springfield Police Officer responded to a report of a vehicle theft that occurred *** in Springfield, IL. Upon arrival, the police officer made contact with Shanae Cave, who advised that her son's 2012 Nissan Altima, valued at approximately $14,000, had been stolen. Ms. Cave advised that the vehicle was last parked in he[r] driveway. Ms. Cave advised that the vehicle has a start button and that the key fob was left in the vehicle. A stolen vehicle card was completed and the vehicle was entered in to [the Law Enforcement Automated Data System]. An attempt to locate the vehicle was aired.
>
> On June 5, 2019, after the defendant was transported to the Sangamon County Jail, [a] police report *** was filed by the Sangamon County Sheriff's Office due to the defendant being extremely combative and insulting toward

deputies. The defendant had a strong odor of alcohol coming from his breath and admitted to being drunk. The defendant agreed to perform field sobriety tests but he would not stop interrupting the deputy's instructions. After several attempts to administer the field sobriety tests and the defendant's inability to stop interrupting and yelling insults at the deputy, the defendant was charged with Aggravated [DUI]. The defendant was later offered a chemical breath test which he refused."

¶ 32 The trial court proceeded to argument regarding sentencing. The State recounted defendant's criminal history, including 2007 misdemeanors for domestic battery and reckless driving, a 2008 misdemeanor for driving on a suspended license, a 2009 misdemeanor DUI, a 2010 misdemeanor for driving on a suspended license, a 2011 misdemeanor for retail theft, 2013 felonies for armed robbery and aggravated robbery, 2017 misdemeanors for driving on a suspended license and DUI, and 2019 felonies for aggravated fleeing and driving on a revoked license. The State emphasized that there is "a pattern there where [defendant] has repeatedly received community-based sentences," "a little bit of time in the county jail," and a six-year prison sentence, none of which worked to deter defendant from committing further crimes. The State argued that an "additional community-based sentence in this case deprecates the seriousness of the situation," as a DUI "puts the community at risk." The State added, "That's not where the story ends, because while he was on probation, he acquired new criminal offenses that the Court has heard evidence of today." It argued that defendant has shown a "continued pattern" of "an inability to comply with not only the Court's orders," but also with "lawful orders of law enforcement." The State emphasized that "[a] community-based sentence is not appropriate in this situation, because, as demonstrated, he cannot complete it," and a "short period of time in the Department

of Corrections is not appropriate," as his previous six-year prison sentence "didn't do any good." The State recommended a sentence of 10 to 14 years in prison.

¶ 33    Defense counsel, in turn, asked for TASC probation due to defendant's mental health, drug, and alcohol issues "that could be addressed by intensive TASC intervention."

¶ 34    The trial court made the following ruling:

"The Court has now considered the entirety of the [PSI], the evidence presented today, the arguments of counsel. I've considered the history, character and attitude of the Defendant and the statement in allocution, and I have considered all of the statutory factors in aggravation and mitigation, whether they are specifically mentioned by me or not.

Having due regard for the circumstances of the offense and the seriousness of the offense with the objective of restoring [defendant] to useful citizenship, I am making the finding—the following findings, excuse me.

Again, I've considered the factors in mitigation and aggravation, as I must consider at a sentencing hearing. They are laid out in the various statutes, 730 ILCS 5/5-5-3.2 and 3.1. While I might not mention each of them individually, I have considered all of them, each and every one of them.

First, with regard to the factors in aggravation, the first factor that jumps out at me is the fact that [defendant] does indeed have a history of prior criminal activity. I have considered the Defendant's previous criminal conduct in—excuse me, strike that, please, the Defendant's previous criminal convictions and sentences related thereto. In fact, there's a stack of cases and convictions that have led to several varying sentences ranging from community-based sentences of supervision

and probation, and I think conditional discharge as well, to multiple sentences to the county jail on varying lengths of incarceration, or periods of incarceration, including one stint in the Department of Corrections for six years. Certainly, the Defendant's criminal history, in this Court's opinion, weighs heavily in terms of a factor in aggravation when it comes to sentencing.

[Defendant], you've had the opportunity over and over and over again to establish a track record of compliance with court orders and with community-based sentence terms, yet the message has not been either received or understood or appreciated by you or a combination of those three.

* * *

So, unfortunately your criminal history is one that is of grave concern to me. I want to be sure that I make a distinction between your criminal history that led to convictions and your criminal history that I am not even going to call a criminal history, your pending criminal charges. As I indicated when I ruled on [defense counsel's] objection, the Court is assigning weight to the testimony of the police officers who testified today for the purposes of determining whether or not a sentence of probation or a community-based sentence would be appropriate. That is the Court's analysis when it comes to their testimony, because, [defendant], you do have a presumption of innocence when it comes to those pending charges. But, I allowed those officers to testify and be subject to cross-examination for the purposes of determining the appropriate sentence, and the Court having all of the relevant and reliable information when it comes to imposing sentence under *Jackson* and the other cases we discussed.

Furthermore, the underlying case in 19-CF-560 is an Aggravated [DUI] case, which does present a risk, a threatened risk of serious harm to motorists, pedestrians, and members of the community, which is another factor in aggravation that the Court is assigning weight to.

Furthermore, a sentence in this case is necessary to deter others from committing the same crime. That sentence would not be a community-based sentence. The Court is not willing to impose a community-based sentence of probation, whether TASC probation or otherwise in this case for those reasons. Those are the factors in aggravation that I am mentioning, although I have considered all of the statutory factors in aggravation.

With regard to mitigation, I have considered the TASC probation correspondence admitted as Defendant's Exhibit A dated 8/9/2024. I am not assigning significant weight to that evidence, and it all goes back to the root cause of the fact that, [defendant], you have been non-compliant in community-based sentences and non-compliant with mental health evaluations and non-compliant with the terms of virtually every court order that you were subject to. So *** to say I have little confidence that you would be compliant with any type of TASC probation mandates, requirements, or other process associated therewith I think is probably an understatement.

* * *

Also, I have considered the fact that the cost of confinement in the Department of Corrections is over $32,000 per year in fashioning the sentence. I am also making a specific finding that a sentence of probation, a community-based

sentence here would deprecate the seriousness of the crime committed and would be inconsistent with the ends of justice.

Considering the totality of the circumstances, and considering all of the statutory factors, the arguments of counsel, the evidence presented, the statement in allocution, I hereby sentence you, [defendant], to serve a period of nine years in the Illinois Department of Corrections, to be served at 50%, followed by a one-year period of mandatory supervised release. Fines, fees and costs are hereby waived."

On defense counsel's request, the court stated that it would include in the judgment and sentence the recommendation to the Illinois Department of Corrections that defendant be incarcerated in a prison that has services for alcohol and substance abuse treatment and mental health counseling.

¶ 35                                D. Motion to Reconsider Sentence

¶ 36        On July 11, 2025, defendant filed a motion to reconsider his sentence. On July 28, 2025, defense counsel filed a motion to withdraw. On August 14, 2025, defendant filed a motion to waive counsel. The trial court held a hearing on defendant's motion to reconsider his sentence on August 20, 2025. Defense counsel argued that "it was improper for the Court to consider the pending charges against [defendant] in aggravation." The State reemphasized its previous argument that the court may consider such evidence to determine the appropriate sentence and whether probation was appropriate as long as the evidence was presented by witnesses who were subject to cross-examination. The court reaffirmed its sentence and denied the motion to reconsider. Defendant continually interrupted the court while it was ruling, and the court eventually removed him from the courtroom. The court then granted counsel's motion to withdraw.

¶ 37        This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39            On appeal, defendant argues that during resentencing, the trial court improperly considered as aggravating factors (1) his conduct on probation rather than the circumstances underlying the original offense and (2) a factor inherent in the offense. He acknowledges that he forfeited both arguments on appeal by not raising them below but contends we may review them for ineffective assistance of counsel.

¶ 40            To demonstrate ineffective assistance of counsel, defendant must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 41                          A. Consideration of Pending Charges

¶ 42            Defendant acknowledges that the trial court properly considered his criminal history and deterrence as aggravating factors and correctly stated that the court may consider the testimony about pending charges solely to determine whether a sentence of probation would be appropriate. However, defendant maintains that the court did not properly resentence him on the underlying offense, especially because the court did not possess the facts of the aggravated DUI. Defendant points out that Judge Noll presided over the guilty plea hearing, while Judge Davis presided over the resentencing hearing, and the transcript of the guilty plea hearing was not prepared until July 2025, a month after resentencing.

¶ 43            "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "The general rule is that we may not reduce a sentence that is within the statutory range unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense."

- 17 -

(Internal quotation marks omitted.) *People v. Miller*, 2021 IL App (2d) 190093, ¶ 22. Importantly, "the trial court is presumed to know the law and to follow it unless the record affirmatively indicates the contrary." *Miller*, 2021 IL App (2d) 190093, ¶ 22.

¶ 44        When a defendant violates a condition of probation, the trial court may continue probation, either with or without modifying the probation conditions, or may impose any other sentence authorized when the defendant was originally sentenced. 730 ILCS 5/5-6-4(e) (West 2018). A court "resentencing a defendant for a revocation of probation abuses its discretion where it imposes a sentence that is punishment for the conduct underlying the revocation, rather than punishment for the original offense." *Miller*, 2021 IL App (2d) 190093, ¶ 23. However, "the sentencing court may consider the defendant's behavior while on probation to the extent that it evidences his rehabilitative potential." *Miller*, 2021 IL App (2d) 190093, ¶ 23; see *People v. Pina*, 2019 IL App (4th) 170614, ¶ 31 ("[I]t was entirely appropriate for the court to comment on and consider [the] defendant's actions on probation as it related to her rehabilitative potential."); *Jackson*, 149 Ill. 2d at 553 ("[P]recluding the use of relevant and reliable evidence because no conviction was obtained would deny the sentencing authority the use of some of the most relevant evidence of a defendant's character, propensities, and likelihood of rehabilitation," which "is critical to the trial court's role in deciding on the most appropriate sentence for each individual offender."). Moreover, " '[i]t is appropriate for a defendant who conducts himself poorly while on probation to receive a more severe sentence than he originally received.' " *Pina*, 2019 IL App (4th) 170614, ¶ 30 (quoting *People v. Palmer*, 352 Ill. App. 3d 891, 895 (2004)).

¶ 45        We will not set aside a sentence within the statutory range on review " '*unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the

original offense.' " (Emphases in original.) *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989) (quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985)). However, "the record must clearly demonstrate that the trial court considered [the] defendant's original offense when fashioning his sentence." *People v. Varghese*, 391 Ill. App. 3d 866, 877 (2009).

¶ 46 Here, defendant pleaded guilty to count II, aggravated DUI, which is a Class 2 felony because it was his third or subsequent DUI (625 ILCS 5/11-501(a), (d)(1)(G), (d)(2)(B) (West 2018)). The sentence for a Class 2 felony is 3 to 7 years in prison, while the extended-term sentence is 7 to 14 years. 730 ILCS 5/5-4.5-35(a) (West 2018). Defendant was eligible for an extended term because he had previously been convicted of a Class 1 felony (aggravated robbery) in 2013. See 730 ILCS 5/5-5-3.2(b)(1) (West 2018). Thus, the trial court's sentence of nine years in prison was within the statutory range and presumptively proper. *Miller*, 2021 IL App (2d) 190093, ¶ 22.

¶ 47 The trial court explained it was considering "the [PSI], the evidence presented today, the arguments of counsel," "the history, character and attitude of the Defendant and the statement in allocution," and the "statutory factors in aggravation and mitigation, whether they are specifically mentioned by me or not." The court, as defendant concedes, properly considered as aggravating factors his criminal history and the need for deterrence.

¶ 48 As to defendant's conduct while on probation, the trial court clearly said it was "assigning weight to the testimony of the police officers who testified today for the purposes of determining whether or not a sentence of probation or a community-based sentence would be appropriate" because defendant had "a presumption of innocence when it comes to those pending charges." Defendant acknowledges this would have been a proper consideration of this testimony

if it was truly limited to that purpose, but he maintains that the court otherwise relied significantly and improperly on such testimony to extend his sentence.

¶ 49 In support of his argument, defendant cites *People v. Gansz*, 2024 IL App (4th) 230243-U, and *Varghese* and contends the State has forfeited any argument in opposition because it failed to cite these two specific cases. We will not find an argument forfeited merely because the parties do not cite the same cases. Moreover, these cases are distinguishable. In *Gansz*, the trial court completely failed to relate "the defendant's conduct on probation to his lack of rehabilitative potential" and explicitly said it was considering as the " 'most aggravating' " factor " 'the level of criminality that has taken place since [the defendant] had [pleaded] guilty.' " *Gansz*, 2024 IL App (4th) 230243-U, ¶ 38. Similarly, in *Varghese*, the court made "only a passing reference to [the] defendant's original offense" and focused on "chastis[ing the] defendant for the reprehensible nature of his conduct while on probation." *Varghese*, 391 Ill. App. 3d at 877.

¶ 50 Here, however, the trial court explicitly and properly restated the applicable law and said it was limiting its consideration of the testimony of the pending charges to determining "whether or not a sentence of probation or a community-based sentence would be appropriate." The court also noted that defendant's noncompliance with prior community-based sentences, mental health evaluations, and other court orders gave it "little confidence that [he] would be compliant with any type of TASC probation mandates, requirements, or other process associated therewith." The court stated that defendant "had the opportunity over and over and over again to establish a track record of compliance with court orders and with community-based sentence terms, yet the message has not been either received or appreciated by you or a combination of those three." The context of this comment shows that it was made in reference to defendant's previous criminal history, not his conduct on probation. Considering the court's ruling in its

entirety, the court clearly considered defendant's conduct on probation only for the purpose of determining whether a sentence of probation would be appropriate. The court did not make any improper statements emphasizing defendant's conduct while on probation that would strongly persuade us that " 'the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense.' " (Emphases in original.) *Vilces*, 186 Ill. App. 3d at 986 (quoting *Young*, 138 Ill. App. 3d at 142).

¶ 51    We are not persuaded by defendant's argument that the trial court failed to properly consider the circumstances of the original offense. Defendant emphasizes that Judge Davis did not preside over or have access to the transcript from the guilty plea hearing where the factual basis for the plea was provided and thus could not have considered the circumstances of the original offense. However, Judge Davis did have access to explicit information about the original offense in the PSI, which he stated he considered. The PSI stated that defendant's family believed the car to be stolen, that defendant was "extremely combative and insulting towards deputies," had a "strong odor of alcohol coming from his breath and admitted to being drunk," was unable "to stop interrupting and yelling at the deputy," and refused a chemical breath test. The only pertinent details excluded from this summary but included in the brief factual basis at defendant's guilty plea hearing before Judge Noll were that defendant was found behind the wheel of a vehicle that was "disabled in a ditch and had hit a tree" and was observed by a witness to be drinking a bottle of vodka while in the vehicle before police arrived. Though part of the circumstances of the offense, these details were not so crucial that their absence from the PSI precluded Judge Davis's consideration of the underlying offense. Even had the same judge presided over the guilty plea hearing and resentencing, it is unlikely a judge would have remembered these details almost five years later.

¶ 52        As to the circumstances of the original offense, the trial court made its findings after first explaining it gave "due regard for the circumstances of the offense and the seriousness of the offense with the objective of restoring [defendant] to useful citizenship." The court then commented that "the underlying case in 19-CF-560 is an Aggravated [DUI] case, which does present a risk, a threatened risk of serious harm to motorists, pedestrians, and members of the community, which is another factor in aggravation that the Court is assigning weight to." Though we will address the propriety of this specific comment in the next section, these statements show that the court did consider the circumstances of the original offense when determining the appropriate length of defendant's incarceration. The length of the court's discussion of the circumstances of the original offense compared to the court's discussion of defendant's conduct on probation is irrelevant where the record does not reflect that the court improperly considered defendant's conduct on probation. See *Miller*, 2021 IL App (2d) 190093, ¶ 27 ("[The d]efendant's mechanical counting of 'mentions' is beside the point. What matters is that 'the record *** clearly demonstrate[s] that the trial court considered [the] defendant's original offense when fashioning his sentence.' ") (quoting *Varghese*, 391 Ill. App. 3d at 877).

¶ 53        In sum, the record shows that the trial court did not impose the sentence to punish defendant for his actions while on probation. Because the court's consideration of the testimony regarding defendant's pending charges was proper, trial counsel cannot be ineffective for failing to object to the sentence on this basis.

¶ 54                            B. Consideration of Harm to the Public

¶ 55        Defendant also argues that the trial court erred when it considered that defendant's conduct threatened harm to the general public, which he contends is a factor inherent in the offense of aggravated DUI. The court must consider certain mitigating and aggravating factors when

determining an appropriate sentence. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2018). One aggravating factor is that a defendant's "conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2(a)(1) (West 2018). Importantly, "a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Phelps*, 211 Ill. 2d at 12. However, "it is appropriate to consider the degree and gravity of the defendant's conduct." *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 25. "When considering if the defendant 'threatened serious harm,' the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67.

¶ 56          "The defendant bears the burden to affirmatively establish that the sentence was based on an improper factor." *Hibbler*, 2019 IL App (4th) 160897, ¶ 65. This court "will not reverse a sentence unless it is evident that the trial court relied upon an improper factor." *Hibbler*, 2019 IL App (4th) 160897, ¶ 65. " 'There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court.' " *Jeffers*, 2022 IL App (2d) 210236, ¶ 24 (quoting *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, citing *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009)). We review this issue *de novo*. *Hibbler*, 2019 IL App (4th) 160897, ¶ 65.

¶ 57          Illinois courts have previously found that a trial court can consider, in sentencing a defendant for a DUI, potential harm to others and the general public presented by driving while intoxicated. See *People v. Turner*, 2018 IL App (1st) 170204, ¶ 89 ("[T]he court could still consider the severity of the risk under the particular facts of this case, including the proximity of

the defendant's conduct to potential victims *other* than [the named victims]." (Emphasis in original.)); *Jeffers*, 2022 IL App (2d) 210236, ¶ 27 ("[I]t was appropriate for the trial court to consider in aggravation the threat of harm to the general public."); see also *People v. Kennedy*, 2025 IL App (4th) 240840-U, ¶ 22 ("The court was permitted to consider the serious threat of harm to the general public given the specific facts of this case."). However, the court must consider the harm posed under the particular facts of the case. In *Turner*, for example, the appellate court emphasized that "the State's evidence demonstrated that other motorists were in close proximity to the defendant and the accident, supporting a finding that the defendant's conduct 'threatened serious harm.' " *Turner*, 2018 IL App (1st) 170204, ¶ 89. Similarly, in *Jeffers*, the appellate court held that the sentencing court properly considered the severity of the threat of harm to the general public where it "appropriately noted the particular danger posed by [the] defendant's conduct of driving the wrong way on a bridge with a substantial median, providing no means to evade his approach." *Jeffers*, 2022 IL App (2d) 210236, ¶ 30.

¶ 58        Here, the trial court clearly considered "a threatened risk of serious harm to motorists, pedestrians, and members of the community" as "another factor in aggravation." However, the court failed to elaborate on how the risk in this particular case posed by defendant's drunk driving compared to "the minimum conduct necessary to commit the offense." *Hibbler*, 2019 IL App (4th) 160897, ¶ 67. Indeed, the court did not highlight the particular facts of the case that could have demonstrated an increased threat of harm to the general public—for example, if there were other motorists or pedestrians on the road, what time of day it was, defendant's particular blood alcohol level, and so on. In fact, the court could not have done so because these facts were not in the record, either in the PSI or the factual basis for defendant's guilty plea. The

- 24 -

court's general statement about the serious threat of harm to the public, therefore, seems to reference the harm inherent in the offense of aggravated DUI.

¶ 59    Generally, even when a trial court considers an improper factor in aggravation, a remand is not required if "it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence." *Dowding*, 388 Ill. App. 3d at 945. Here, however, defendant did not preserve the issue for review, so he raises his challenge under the framework of ineffective assistance of counsel for failing to object to the court considering an improper aggravating factor. As part of presenting an ineffective-assistance claim, it is the defendant's burden to show that he was prejudiced by counsel's actions. See *Strickland*, 466 U.S. at 687. Thus, the specific question for our consideration is whether there is a reasonable probability that the result of the sentencing hearing would have been different had defendant's counsel objected to the court considering an aggravating factor that is inherent in the offense of aggravated DUI. See *Strickland*, 466 U.S. at 694.

¶ 60    When determining "whether trial courts have afforded significant weight to improper factors such that remand would be required," appellate courts may consider "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute." *Dowding*, 388 Ill. App. 3d at 945. Again, "[t]here is a strong presumption that the trial court based its sentencing determination on proper legal reasoning." (Internal quotation marks omitted.) *Jeffers*, 2022 IL App (2d) 210236, ¶ 24.

¶ 61    Here, the record establishes the weight the trial court gave to the threat of serious harm was insignificant and did not lead to a greater sentence. See, *e.g.*, *Dowding*, 388 Ill. App. 3d at 945 (collecting cases); *People v. Chipman*, 2025 IL App (4th) 241038-U, ¶¶ 27-29. The court

only briefly considered the threat of serious harm to the general public, without any lengthy or emphatic comments. In contrast, the court emphasized defendant's criminal history, specifically noting that it "weigh[ed] heavily in terms of a factor in aggravation," was a "grave concern," and demonstrated that he had not learned from his previous sentences. Indeed, defendant's criminal history is extensive and involves repeated instances of similar driving-related offenses between 2007 and 2019, including a misdemeanor for reckless driving, four misdemeanors for driving on a suspended license, two misdemeanor DUIs, one felony for driving on a revoked license, and one felony for aggravated fleeing and eluding. Moreover, defendant's 9-year sentence was only 2 years longer than the minimum for an extended-term sentence for a Class 2 felony and well below the maximum of 14 years. 730 ILCS 5/5-4.5-35(a) (West 2018). Defendant's sentence was undoubtably justified and appropriate based on the other two independent aggravating factors considered by the court: defendant's criminal history and the need for deterrence.

¶ 62            Though defendant argues on appeal that the aggravating factors did not outweigh the mitigating factors—namely, that he experienced childhood trauma and had mental health and substance abuse issues—we will not reweigh sentencing factors on appeal. See *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56 (emphasizing that a reviewing court "may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently"); *People v. Holman*, 2014 IL App (3d) 120905, ¶ 75 ( "[A] trial court [is] not required to view [the] defendant's history of mental health issues *** or [the] defendant's troubled childhood as mitigating in nature.").

¶ 63            Overall, there is no indication in the record that the trial court improperly placed significant weight on the threat of serious harm in determining the appropriate sentence. Thus, even had defendant's trial counsel objected during the sentencing hearing to the court's reliance

on the threat of harm as an aggravating factor, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 64                                  III. CONCLUSION

¶ 65        For the reasons stated, we affirm the trial court's judgment.

¶ 66        Affirmed.